UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONY BIRITTIERI,<br><br>                          Plaintiff,<br><br>  - against –<br><br>WHOLE FOODS MARKET GROUP, INC. and<br>WHOLE FOODS MARKET,<br><br>                       Defendants. | Index No.:<br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

       Plaintiff TONY BIRITTIERI ("Plaintiff' or "BIRITTIERI"), by and through his attorneys SHEGERIAN & ASSOCIATES, as and for his Complaint against Defendant WHOLE FOODS MARKET GROUP, INC. ("Defendant" or "WHOLE FOODS") and WHOLE FOODS MARKET ("Defendant" or "MARKET"), states and alleges on information and belief as follows:

**PRELIMINARY STATEMENT**

      1.    This is an action by Plaintiff, BIRITTIERI, whose employment with WHOLE FOODS and MARKET was wrongfully terminated by Defendants and against Defendants for disability discrimination, age discrimination, and failure to provide reasonable accommodation under: (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and its Amendments ("Title VII"); (b) the Americans with Disabilities Act, 42 U.S.C.A. § 1201 *et seq.* ("ADA"), and (c) the New York State Executive Law § 296 *et seq.* ("NYS Human Rights Law").

      2.    Plaintiff brings this action against Defendants for economic, non-economic, compensatory, and punitive damages, pre-judgment interest, and costs and reasonable attorneys' fees, and such other and further relief as this Court deems equitable and just.

**JURISDICTION AND VENUE**

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this is an action seeking redress for the violation of Plaintiff's rights under federal law.

4.     Plaintiff respectfully requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in this action within the original jurisdiction of this court that are formed as part of the same case or controversy.

5.     Pursuant to New York State Executive Law § 298-a, the provisions of the NYS Human Rights Law shall apply to acts committed outside of New York state against a resident of New York state since such acts would constitute unlawful discriminatory practice if committed within New York state.

6.     Venue herein is proper for the United States District Court for the Southern District of New York pursuant to 28. U.S.C. § 1391, because Defendants reside in this judicial district and is subject to this Honorable Court's personal jurisdiction with respect to this civil action in question.

**ADMINISTRATIVE PROCEDURES**

7.     Within the time prescribed by law, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of federal law including, but not limited to, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, Civil Rights Act of 1991, Fair Employment and Housing Act Government Code §§ 12900, 12940-12941, *et seq*, and the Americans with Disabilities Act, 42 U.S.C.A. § 1201 *et seq.*, annexed hereto as **Exhibit "A."**

8.      The EEOC subsequently issued Plaintiff a Notice of Right to Sue, received on or around July 26, 2021, attached hereto as **Exhibit "B."**

9.      On or around October 22, 2021, a copy of this Complaint was mailed to the New York State Division of Human Rights, the New York State Department of Labor, and the Attorney General Office thereby satisfying the notice requirements of the New York State Human Rights Law and N.Y. Civ. Rights § 40-d**.**

## JURY DEMAND

10.     Pursuant to the Seventh Amendment of the United States Constitution and pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint.

## PARTIES

11.     *Plaintiff:*  Plaintiff BIRITTIERI is, and at all times mentioned in this Complaint was, a resident of the State of New York.

12.     Defendant WHOLE FOODS was and still is a foreign corporation authorized to do business in the States of New York and Connecticut and the United States government. Defendant's place of business where the following causes of action took place, was and is, in New York State and the State of Connecticut.

13.     Defendant MARKET is authorized to do business in the States of New York and Connecticut.

14.     The Defendants, and its agents, compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under federal law including, but not limited to, (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and its Amendments ("Title VII"); (b) the Americans with Disabilities Act, 42 U.S.C.A. § 1201 *et seq.*, and (c) the New York State Executive Law § 296 *et seq.* ("NYS

Human Rights Law").

15.     The Defendants, and its agents, were responsible for the events and damages alleged herein, including on the following bases:  (a) Defendants, and its agents, committed the acts alleged; (b) at all relevant times, Defendants, and its agents, was the agent or employee, and/or acted under the control or supervision, of Defendants, and its agents, and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among Defendants, and its agent, such that any individuality and separateness between or among those Defendants, and its agents, has ceased, and Defendants, and its agents, are the alter egos of one another.  Defendants, and its agents, exercised domination and control over one another to such an extent that any individuality or separateness of Defendants, and its agents, does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of Defendants, and its agents, would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of Defendants, and its agents, were taken by employees, supervisors, executives, officers, and directors during employment with Defendants, were taken on behalf of Defendants, and its agents, and were engaged in, authorized, ratified, and approved of by Defendants.

16.     WHOLE FOODS and MARKET, and its agents, both directly and indirectly employed Plaintiff as defined by federal law including, but not limited to, (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and its Amendments ("Title VII"); (b) the Americans with Disabilities Act, 42 U.S.C.A. § 1201 *et seq.*, and (c) the New York State Executive Law § 296 *et seq.* ("NYS Human Rights Law").

17.     In addition, WHOLE FOODS and MARKET, and its agents, compelled, coerced, aided, and abetted the retaliation and discrimination, which is prohibited under federal law including, but not limited to, (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and its Amendments ("Title VII"); (b) the Americans with Disabilities Act, 42 U.S.C.A. § 1201 *et seq.*, and (c) the New York State Executive Law § 296 *et seq.* ("NYS Human Rights Law").

18.     Finally, at all relevant times mentioned herein, Defendants, and its agents, acted as agents of each other in committing the acts alleged herein.

## STATEMENT OF FACTS

19.     *Plaintiff's hiring:* Plaintiff BIRITTIERI was a dedicated employee of WHOLE FOODS and MARKET from March 15, 2019, until his termination on September 28, 2020. Plaintiff was a full-time pizza maker at the time of his termination.

20.     *Plaintiff's job performance:* Plaintiff BIRITTIERI was regarded a strong worker at Whole Foods Market, located at 90 E Putnam Avenue, Greenwich, CT 06830, as Plaintiff earned a full-time position after starting in a part-time role.  Plaintiff was told by his supervisors that he was doing a great job and had a future within the company.

21.     Shortly after being hired by WHOLE FOODS and MARKET, Bibany (last name unknown), manager, gave Plaintiff a pat on the back and told him he was doing great.  Ian (last name unknown), supervisor, told Plaintiff that he can see Plaintiff moving forward at WHOLE FOODS and MARKET.

22.     *Plaintiff's protected status and activity:* Plaintiff was subjected to discrimination based on, among other things, his disabilities and age.

23.     *Defendants' adverse employment actions and behavior:* Shortly after hiring, MARKET became understaffed and Plaintiff was left to handle the closing responsibilities that were originally carried out by seven (7) employees.

24.     While short staffed, Bibany notified Plaintiff that he could start cleaning 5 minutes to 9:00pm, which is when he ended his shift.  Plaintiff sometimes started earlier and would be threatened by Bibany to receive a write-up.

25.     Plaintiff was advised that he was not allowed to clock out anytime after 10:30pm because they did not want to pay Plaintiff overtime.

26.     To avoid getting written up, Plaintiff would punch out early and go back and finish cleaning.

27.     Plaintiff did not receive any raises during his tenure with WHOLE FOODS and MARKET, despite making several requests.

28.     In July 2019, Plaintiff put his coffee cup down to help getting the food out on time. Bibany came up to the staff at the Market and asked, "who's cup is that" and made a commotion over it, even though she saw me put it down.

29.     Upon information and belief, Bibany was singling Plaintiff out because other co-workers would always have stuff laying around.

30.     In October of 2019, Plaintiff was verbally reprimanded for using the organic cutting machine on non-organic products.

31.     Upon information and belief, other employees would use the organic machine to cut non-organic items during busy times at the market.

32.     Plaintiff dealt with chronic knee issues, high blood pressure, spinal stenosis, and a workplace injury during his tenure with WHOLE FOODS and MARKET.

33.     Plaintiff advised his supervisor (Ian) and co-workers that he needed a double-knee replacement and of his other disabilities.

34.     On multiple occasions, Plaintiff notified Ian that he was unable to work night shifts because of complications with his knees.

35.     Ian repeatedly told Plaintiff that, due to the short staff, Plaintiff needed to come in and work the night shifts.

36.     Plaintiff suffered from several disabilities (high blood pressure, knee issues, spinal stenosis, and his workplace injury in 2020).

37.     Following Plaintiff's request to provide a doctor's note for nights off, Ian advised Plaintiff that, "I wouldn't do that if I were you."

38.     In May 2020, Plaintiff's wife passed away.  Plaintiff requested to take time off to attend the funeral mass and Plaintiff received a verbal approval from Ian to take the leave.

39.     On the day of the mass, Plaintiff was advised that he needed to log his day off in the company portal, but Plaintiff was never shown how to do that.  Plaintiff then paid a co-worker to show him how to use the system.

40.     Following the death of Plaintiff's wife, Plaintiff was asked by Bibany why he was not wearing his boots.  Plaintiff advised Bibany that his boots were wet, and the slip-ons did not fit him.

41.     During this day, Plaintiff observed four other employees not wearing the proper shoes.

42.     As Plaintiff was walking back to the charcuterie station, Bibany asked Plaintiff why he was upset, and Plaintiff advised her that he was upset about his wife.  Bibany responded, "Well isn't she dead?"

43.     Later in May 2020, Plaintiff took a personal call with his daughter who was experiencing an anxiety attack related to her mother's death.

44.     Ian threatened Plaintiff with a write-up for taking the call.

45.     In July 2020, Plaintiff accompanied his daughter to the emergency room for a cyst located on her ovary.

46.     Plaintiff was given permission from Ian to accompany his daughter to the hospital.

47.     However, upon returning to work, Plaintiff was issued a warning for being late.

48.     Plaintiff attempted to provide a doctor's note, but it was not accepted by Ian.

49.     In September 2020, Plaintiff injured his back while cleaning kitchen equipment. Plaintiff was cleaning underneath the stove and hurt his back bending over to reach the floor.

50.     Plaintiff went to the doctor's office and obtained a note advising Defendants that Plaintiff should take a week off from work.

51.     The doctor's note stated that Plaintiff should take a week off from work and then return to work with restrictions on physical labor.

52.     Plaintiff was forced to return to work four days later with no accommodations or adjustments to Plaintiff's schedule.

53.     On several occasions, Plaintiff was a witness to unsanitary conditions at the Market.

54.     Plaintiff witnessed molded and expired vegetables being served to customers and molded food in the charcuterie area of the Market.

55.     After attempting to remedy the situation, Plaintiff was told not to worry about it.

56.     Plaintiff complained multiple times about employees not wearing safety gloves because they could get injured.

57.     In September 2020, during an employee review session, Plaintiff was told that he had to write positive reviews about his peers, or he would be let go.

58.     In fear of losing his job, Plaintiff gave everyone at MARKET positive peer reviews.

59.     Prior to Plaintiff's termination, Plaintiff noticed a trend in hiring younger and more able employees.

60.     Upon information and belief, Plaintiff was replaced with a younger and more able employee.

61.     Upon information and belief, during Plaintiff's tenure, African American employees were receiving preferential treatment by supervisor Collin (last name unknown), as they would get scheduling preference over Plaintiff.

62.     Several times, Plaintiff told Collin and Ian that he needed Sundays off to go to church.  These requests were continuously denied throughout Plaintiff's tenure.

63.     *Termination of Plaintiff's Employment*:  During the Plaintiff's last week of work, he was not supposed to be working because of the doctor's note he received.  On September 27, 2020, Ian called Plaintiff and told him he was supposed to be working.  Plaintiff was not scheduled to work.  Plaintiff was told to call Collin.

64.     Plaintiff called multiple times asking to speak with the store manager.  Finally, Collin picked up and notified Plaintiff that he was terminated by Defendants.  Plaintiff asked Collin what he meant, and Collin told him that he was separated from Defendants and to not come back to work.  Collin hung up the phone.

65.     There was no reason provided for Plaintiff's termination.

66.     Plaintiff received his final pay on September 30, 2020.

67.     Immediately following Plaintiff's workplace injury, Plaintiff was terminated without any accommodations and offered no cooperative dialog or engagement concerning his disabilities.

68.     *Economic damages:*  As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

69.     *Non-economic damages:*  As a consequence of Defedants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

70.     *Punitive damages:*  The conduct of Defendants' was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages under Federal Law. In addition, Defendant's conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants under State Law.

71.     *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

///

///

///

**FIRST CAUSE OF ACTION**

**Violation of the Americans with Disabilities Act ("ADA") of 1990 and its Amendments, 42 U.S.C. § 12101 *et seq*. for Discrimination Based on Plaintiff's Disabilities; Failure to Provide Reasonable Accommodations – Against all Defendants**

72.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

73.     At all times herein mentioned, the ADA and its amendments, were in full force and effect and was binding on Defendants.  This law, and corresponding regulations, prohibit disability discrimination and requires Defendants to provide reasonable accommodations to employees who they know are disabled.

74.     Plaintiff's high blood pressure, knee issues, workplace injury, and spinal stenosis constitute disabilities within the meaning of the ADA.

75.     Plaintiff, at all times relevant, was able to perform in a reasonable manner the activities involved in his job upon the provision of reasonable accommodations.  For example, employees in the same position as Plaintiff, who did not have a disability, were granted preferential treatment regarding the night shift.  Requiring Plaintiff to work the night shift was thus a reasonable accommodation available to Defendants that would not create an undue burden on WHOLE FOODS and MARKET.

76.     Defendants wholly failed to attempt any reasonable accommodation of Plaintiff's known disabilities.  Instead, Defendants terminated Plaintiff's employment based on his disabilities, request for disability leave, and retaliated against Plaintiff for seeking to exercise rights guaranteed under the ADA and its amendments and/or opposing Defendants' failure to provide such rights, including rights of reasonable accommodation, leave rights, intermittent leave rights, and/or the right to be free of discrimination, in violation of the ADA and its amendments.

77.     Under the ADA, after Plaintiff requested accommodation, Defendants were obligated to engage in a good faith interactive process with Plaintiff in order to address and accommodate his disabilities, including a duty to investigate a feasible accommodation for Plaintiff's disabilities.

78.     At all times relevant, Defendants knew of Plaintiff's disabilities yet never initiated the required interactive, individualized process.  Instead, Defendants' denied Plaintiff's request for reasonable accommodation and discriminated against Plaintiff for informing Defendants of his disabilities and requesting accommodation from his employer.  Plaintiff believes, and on that basis alleges, that his disabilities, the need to accommodate those disabilities, and his request for accommodations were substantial motivating factors in Defendants' termination of his employment.

79.     As a proximate result of Defendants' discrimination against Plaintiff based on his disabilities, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

80.     As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

81.     As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

82.     The conduct of Defendants was willful, outrageous, malicious, intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights and the requirements of federal law, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

**Violation of the Americans with Disabilities Act ("ADA") of 1990 and its Amendments, 42 U.S.C. § 12101 *et seq*. for Retaliation Against Plaintiff for Requesting Accommodation of His Disabilities – Against all Defendants**

83.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

84.     Plaintiff engaged in the protected activity of requesting accommodation for his disabilities, specifically by 1) informing his supervisors at WHOLE FOODS and MARKET that he could not work nights, 2) attempting to provide a doctor's note to Defendants regarding his disabilities, and 3) providing a doctor's note following his workplace injury in September 2020.

85.     Defendants was alerted of Plaintiff's requests for reasonable accommodation and Plaintiff was terminated from his employment because Defendants retaliated against him.

86.     As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

87.     As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

88.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

89.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against Defendants.

**THIRD CAUSE OF ACTION**

**Violation of New York State Human Rights Law for Disability Discrimination – Against all Defendants**

90.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

91.    The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

92.    Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296.  Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against Plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's disabilities and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296; Failing to engage plaintiff in a good faith interactive process regarding his request for accommodation in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's disabilities and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on Plaintiff's disabilities and/or other good faith complaints, and/or other protected characteristic or activity

- Plaintiff's disabilities, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or

otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

93.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

94.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

95.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

96.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
**Violation of New York State Human Rights Law for Failure to Provide Reasonable Accommodations to Known Disability – Against all Defendants**

97.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

98.    The New York Executive Law §296(3)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

99.     Plaintiff's high blood pressure, knee issues, workplace injury, and spinal stenosis constitute disabilities within the meaning of the New York State Human Rights Law.

100.    Defendants had notice of the disabilities, both at the time of Plaintiff's hiring, and through Plaintiff's repeated requests for accommodation of his disabilities.

101.    Plaintiff could perform the essential functions of his position at WHOLE FOODS and MARKET with the requested accommodations.

102.    Defendants refused to make such accommodations.

103.    Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296(3)(a).

104.    As a proximate result of Defendants' willful, knowing, and intentional failure to provide reasonable accommodations, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

105.    As a proximate result of Defendants' willful, knowing, and intentional failure to provide reasonable accommodations, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

106.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

///
///
///
///
///

## FIFTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Retaliation for Requesting Reasonable Accommodation – Against all Defendants**

107. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

108. Defendants' conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and Defendants committed unlawful employment practices, including by the following, separate bases for liability: retaliating against Plaintiff, including by reprimanding him for clocking out to avoid having to pay him overtime, to reprimand him for being late when he notified his supervisors, for writing up Plaintiff, for forcing Plaintiff to come back to work despite doctor's order, and ultimately terminating his employment for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing Defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on disabilities, and the right to engage in the interactive process, in violation of New York State Human Rights Law sections 296(1)(e) and 296(7).

109. Plaintiff engaged in the protected activity under the NYSHRL of opposing WHOLE FOODS and MARKET's failure to provide reasonable accommodation for his disabilities, specifically by repeatedly asking for reasonable accommodations and complaining to management.

110. As a proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

111. As a proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and continues to suffer

humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

112.   Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling plaintiff to compensatory damages against Defendants.

## SIXTH CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments for Age/Disability Discrimination – Against all Defendants

113.   The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

114.   Defendants' conduct, as alleged, violated Title VII, U.S.C.A. § 2000e et seq and its Amendments. Defendants committed unlawful employment practices, including by the following bases for liability:

- Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's age/disability in violation of Title VII, U.S.C.A. § 2000e et seq and its Amendments;

- Plaintiff's age/disability was a motivating factor in, among other things, Defendants' decision to ignore Plaintiff's good faith complaints about discrimination, providing unjustified performance reviews, harassing Plaintiff, overworking Plaintiff, terminating Plaintiff, and/or otherwise discriminating against Plaintiff, in whole or in part based on Plaintiff's age/disability.

115.   As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

///

///

116.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

117.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

118.    Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against Defendants.

### SEVENTH CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments for Retaliation – Against all Defendants**

119.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

120.    Plaintiff engaged in protected activities when he made multiple complaints of discrimination to Defendants' management *i.e.* Ian and Collin.

121.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: to ignore Plaintiff's good faith complaints about discrimination, harassing Plaintiff, overworking Plaintiff, repeatedly denying Plaintiff's request for accommodations, and, ultimately, terminating Plaintiff.   Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

122.    By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

123.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

124.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation, and damage to reputation.

**EIGHTH CAUSE OF ACTION**
**Violation of New York State Human Rights Law for Age Discrimination – Against All Defendants**

125.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

126.     The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

127.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296.  Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against Plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, ignoring Plaintiff's good faith complaints, providing unjustified performance reviews, harassing Plaintiff, overworking Plaintiff, terminating Plaintiff, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's age, and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's age and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, Plaintiff's age and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Plaintiff's age and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff including, but not limited to, ignoring Plaintiff's good faith complaints, providing unjustified performance reviews, harassing Plaintiff, overworking Plaintiff, and terminating Plaintiff.

128. Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

129. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

130. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

131. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

///

///

///

**NINTH CAUSE OF ACTION**
**Violation of New York State Human Rights Law for Retaliation for Opposing**
**Discrimination and Harassment Based on Age/Disability—Against All Defendants**

132.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

133.    Defendants' conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and Defendants committed unlawful employment practices, including by the following, separate bases for liability:  retaliating against Plaintiff by ignoring Plaintiff's good faith complaints, providing unjustified performance reviews, harassing Plaintiff, overworking Plaintiff, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's age, disability, and/or other good faith complaints and ultimately terminating Plaintiff for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing Defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on age and disability, in violation of New York State Human Rights Law sections 296(1)(e) and 296(7).

134.    Plaintiff is entitled to all available compensation under the New York State Human Rights Law.

135.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

136.    Under the New York State Human Rights Law, as a proximate result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in an amount according to proof.

137.   Under the New York State Human Rights Law, as a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, in an amount according to proof.

138.   Under the New York State Human Rights Law, as a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TONY BIRITTIERI, respectfully requests that this Honorable Court grant judgment, as follows:

A declaratory judgment that the actions, conduct and practices of Defendant(s) complained of herein violated the laws of the United States and State of New York;

An award of damages against Defendant(s), in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

An award of damages against Defendant(s), in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including but not limited to, compensation for Plaintiff's emotional distress;

For general and special damages according to proof;

For exemplary damages, according to proof;

For pre-judgment and post-judgment interest on all damages awarded;

For reasonable attorneys' fees;

For costs of suit incurred;

For an award of punitive damages in an amount to be determined at trial;

For an award of pre-judgment interest on all amounts due;

For such other and further relief as the Court may deem just and proper.

Dated:  October 22, 2021                            SHEGERIAN & ASSOCIATES

                                                    *Michael C. Anderson*
                                                    _____
                                                    Michael C. Anderson, Esq.
                                                    *Attorneys for Plaintiff*
                                                    TONY BIRITTIERI
                                                    90 Broad Street, Suite 804
                                                    New York, New York 10004
                                                    Tel.: (212) 257-8883
                                                    Fax: (212) 804-7299
                                                    manderson@shegerianlaw.com